FILED'08 SEP 22 16:24usDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LILLIAN CLARK,

                Plaintiff,

       v.

MICHAEL J. ASTRUE,
Commissioner of Social Security

              Defendant.

Civil No. 07-702-AC

AMENDED FINDINGS
AND
RECOMMENDATION

ACOSTA, Magistrate Judge:

Plaintiff Lillian Clark ("Clark") seeks judicial review of the Social Security Commissioner's

final decision denying her application for Disability Insurance Benefits ("DIB") under Title II of the

Social Security Act ("Act"). This court has jurisdiction under 42 U.S.C. § 405(g).

On January 9, 2008, the Commissioner moved this court to remand for further proceedings

to correct errors in his decision (docket # 22). Clark opposed additional proceedings and sought

1 - AMENDED FINDINGS AND RECOMMENDATION

remand for the calculation and immediate award of benefits.  On April 24, 2008, I issued my

Findings & Recommendation, in which I concluded that the matter should be remanded to the

Commissioner for further proceedings.  (Docket # 28)("Original Findings & Recommendation").

Clark filed objections to the original Findings and Recommendation, to which defendant replied.

On July 24, 2008, District Judge Brown entered an Order ("Order") resubmitting the matter to me

for further consideration.  (Docket #32).  These Amended Findings & Recommendation therefore

address arguments originally raised before this court, arguments raised in objections filed in response

to the original Findings & Recommendation but which were not included in the arguments originally

raised before this court, and additional issues subsequently identified by Judge Brown in her Order.

Upon full and careful consideration of Clark's original arguments as well as the new

arguments she raised in her objections, and of the points made in Judge Brown's Order, I again find

that the Commissioner's motion to remand for further proceedings should be granted and that the

Commissioner's final decision should be remanded for further administrative proceedings.

## BACKGROUND

Clark was born in 1950 and completed three years of college. Tr. 91, 120.[1]  Between 1981

and 1996 Clark worked as a secretary, data processor, and industrial draftsman.  Tr. 137.

Clark applied for DIB on April 5, 1997.  Tr. 91-93.  Clark initially alleged she became

disabled on April 5, 1996, due to "cancer/complete hysterectomy," thoracic spine osteoarthritis,

anxiety, depression, and "contusions in both knees." Tr. 18, 91, 103.  After a hearing in March 2000

(Tr. 1210-1259, 723-30), Administrative Law Judge ("ALJ") Joseph Schloss issued a decision on

---

[1]Citations "Tr." refer to indicated pages in the official transcript of the administrative
record filed with the Commissioner's Answer July 16, 2007 (Docket #10).

August 10, 2000, in which he found Clark not disabled. Tr. 723-30. On November 15, 2001, the Appeals Council reversed and remanded that decision, citing as reasons that the ALJ's decision did not indicate he had considered all of Clark's limitations; did not identify the weight accorded to opinion evidence; did not reflect what consideration, if any, the Veteran's Administration opinion of unemployability received; did not reflect the consideration, if any, given to Clark's mental impairments in arriving at Clark's residual function capacity ("RFC") determination; did not indicate why he found Clark's testimony not entirely credible; and did not indicate why he did not consider lay testimony on the issue of Clark's limitations. Tr. 736-40.

In October 2002, ALJ Schloss held a second hearing (Tr. 1260-1293), and convened a third hearing on April 17, 2003. (Tr. 1294-1333.) On December 3, 2003, ALJ Schloss issued a decision in which he found Clark not disabled, but limited to sedentary work. Tr. 1004-22. On September 23, 2004, the Appeals Council reversed and remanded the matter again, and this time directed that an ALJ other than ALJ Schloss hear the matter on remand. Tr. 1034-36; 1053-55. The Appeals Council instructed the new ALJ to clarify the prior RFC assessment, and properly consider limitations arising from Clark's dysthymia, major depression, anxiety disorder, post-traumatic stress disorder, and alcohol abuse. Tr. 1034-36, 1053-55.

On April 26, 2005, ALJ Dan Hyatt held a hearing on Clark's claim. Tr. 1334-1363. On November 1, 2005, ALJ Hyatt also found Clark not disabled, the third such determination by an ALJ in Clark's case. Tr. 17-32. ALJ Hyatt concluded that, upon review of the testimony at the hearing and all the evidence in the record, Clark "has not been disabled within the meaning of the Social Security Act, at any time since her alleged disability onset date of April 5, 1996 through her date last insured of March 31, 2002." Tr. 18. Among ALJ Hyatt's specific findings were that Clark's

3 - AMENDED FINDINGS AND RECOMMENDATION

"allegations regarding her pain and limitations are not entirely credible" and that she "has the residual functional capacity for the 'wide range' of Sedentary exertion with Postural and Vocational non-exertional limitations . . . ." Tr. 31. ALJ Hyatt also found that Clark "possesses the residual functional capacity to perform in her past relevant work of 'Data Input Worker; Bookkeeper and Graphics Illustrator,'" and that she "is not disabled within the meaning of the Social Security Act (20 CFR § 404.1565)," and had not been under a disability at any time. Tr. 31-32. Notably, each of these findings by ALJ Hyatt in his November 2005 decision paralleled the findings ALJ Schloss had made on these same points in his September 2003 decision. *Compare* Tr. 31-32 (5, 7, 10, and 11) *with* Tr. 1021-22 (Paragraph Numbers 5, 7, 8, 12, 13, and 14).

On March 10, 2007, the Appeals Council accepted additional evidence into the record but denied Clark's request for review of ALJ Hyatt's decision. Tr 6-9. Accordingly, ALJ Hyatt's November 2005 decision is the Commissioner's final decision that is now before the court on Clark's appeal.[2]

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. § 404.1520, *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Clark challenges the ALJ's evaluation of the evidence and his conclusions at step four.

---

[2] The Appeal Council's March 10, 2007, denial notice mistakenly refers to Clark's request to review the "decision dated December 3, 2003," decision, rather than the November 1, 2005, decision. Tr. 6. Clark's opening brief (#18) makes clear that the March 10, 2007, Appeals Council denial was issued in response to Clark's request for review of the November 1, 2005, decision. Plaintiff's Opening Brief 2.

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If she is, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month duration requirement. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). If the claimant does not have such a severe impairment, she is not disabled. *Id.*

At step three, the ALJ determines if the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the ALJ determines the impairment meets or equals a listed impairment, the claimant is disabled. 20 C.F.R. §§ 404.1520(d).

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's RFC. The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. § 404.1520(e); Social Security Ruling ("SSR") 96-8p. Assessing a claimant's credibility regarding her symptoms and their functional effect is part of the RFC determination when the record establishes the existence of a medically determinable impairment that could reasonably give rise to the claimant's reported symptoms. *Robbins v. Social Security Administration*, 466 F.3d 880, 883 (9th Cir. 2006). Ultimately, the ALJ uses this information to determine if the claimant can perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv).

If proceedings reach step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. *Yuckert*, 482 U.S. at 141-2; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999), 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f).

5 - AMENDED FINDINGS AND RECOMMENDATION

Although the initial burden of establishing disability rests upon the claimant, *Tackett*, 180 F.3d at 1098, if proceedings reach the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100; *Bowen*, 482 U.S. at 141-42. If the Commissioner meets his burden and demonstrates that the claimant can perform "any other substantial gainful activity in the national economy . . . the claimant is not disabled." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); 20 C.F.R. § 404.1520(g).

## THE ALJ'S FINDINGS

It is undisputed that Clark satisfied the insured status requirements of the Act only through March 31, 2002, and that she must show that she became disabled on or before that date to prevail on her claim. Tr. 18.

At step two, the ALJ found that Clark had a combination of impairments which satisfied the regulatory definition of "severe" for the purposes of step two of the sequential analysis. Clark's severe impairments include degenerative joint disease of the lumbosacral spine, cervical spine, knees, and shoulders, dysthymia, and an anxiety disorder. Tr. 19. The ALJ found that Clark's obesity, hepatitis C, and depression did not independently satisfy the regulatory definition of severe. *Id.* The ALJ did not address Clark's history of cervical cancer and associated hysterectomy.

At step three, the ALJ found that Clark's impairments did not meet or equal a listed impairment. Tr. 31. The ALJ then evaluated Clark's RFC:

> [P]erforming at the "wide range" of Sedentary exertion with Postural and a Vocational non-exertional limitation. Exertionally, she can "lift

6 - AMENDED FINDINGS AND RECOMMENDATION

and carry up" [sic] to no more than 10 pounds at any time. She can "sit" 5 hours (cumulatively, not continuously), in an 8 hour workday with normal breaks; she can "stand and walk" up to 2 hours in each activity (cumulatively, not continuously) in an 8 hour workday with normal breaks.

Tr. 29. The ALJ additionally restricted Clark from "stooping, kneeling, crouching and crawling," adding that she can "climb stairs and equivalent ramps, however she should not be, [sic] in sedentary work, required to climb ropes, ladders and scaffolding." *Id.* Finally, the ALJ stated that Clark "should be assigned work and tasks requiring no more than 'occasional' interaction with the general public." Tr. 29-30.

At step four, the ALJ found that Clark could perform her past relevant work. Tr. 30-31. The ALJ therefore found Clark not disabled throughout the period in question. Tr. 32.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance," *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993).

The reviewing court may not substitute its judgment for that of the Commissioner. *Robbins*, 466 F.3d at 882; *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Thus, where the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be

upheld, even where the evidence can support either affirming or reversing the ALJ's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, *inter alia,* medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins*, 466 F.3d at 883, *citing* SSR 96-8p, 1996 WL 374184, at *5; 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir.1996). However, the reviewing court must consider the entire record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

## DISCUSSION

Because the Commissioner concedes his decision cannot be affirmed (docket #23), my review is limited to determining whether the ALJ's errors require either remand for further proceedings or an immediate award of benefits.

Clark contends the Commissioner failed to accurately assess her RFC because the ALJ improperly evaluated her testimony, the medical evidence, and the testimony of a lay witness. The Commissioner concedes these errors. Def.'s Br., 2. Clark also contends the ALJ erred at step four by improperly applying SSR 96-9p. Clark argues the proper application of SSR 96-9p compels a finding of disability. The Commissioner disputes this argument. Def.'s Br., 6.

Judge Brown instructed me to revisit the relevant legal standards pertaining to many of these

8 - AMENDED FINDINGS AND RECOMMENDATION

issues, and to consider the legal standards governing an ALJ's duty to develop the record and the evaluation of the medical opinions of nurse practitioners. Order, 6, 11. These standards are discussed in conjunction with plaintiff's arguments, below.

## I.    Clark's Credibility

Clark asserts that crediting her testimony establishes that she is disabled at step five in the sequential proceedings and concurrently entitled to benefits. Pl.'s Opening Br., 26.

The ALJ found Clark's testimony not credible. Tr. 18. The Commissioner concedes that the ALJ failed to provide adequate reasons for rejecting Clark's testimony. Def.'s Br., 2. Therefore this court must determine if the erroneously evaluated testimony should be credited or if the ALJ should re-evaluate this testimony upon remand. The Order asserts that this court initially cited the wrong standard for crediting a claimant's testimony. Order, 9.

### A.    Standards For Crediting Testimony

The Order notes that the Ninth Circuit has repeatedly affirmed a three-prong test for determining when a reviewing court may credit a claimant's testimony. The reviewing court must credit a claimant's erroneously rejected testimony "as a matter of law" when

> (1) [T]he ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are *no outstanding issues* that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ *would be required* to find the claimant disabled were such evidence credited.

*Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)) (emphasis added).

Because the Commissioner concedes that the matter must be remanded, the Commissioner

9 - AMENDED FINDINGS AND RECOMMENDATION

has conceded that the ALJ failed to provide legally sufficient reasons for rejecting Clark's testimony, which is the first prong of the *Harman* standard. For this reason, the original Findings & Recommendation did not address this standard and it is not presently necessary to reiterate the ALJ's analysis which the Commissioner presently concedes to be flawed.

The original Findings & Recommendation explicitly refer to the second prong of the *Harman* standard, and notes that the reviewing court may credit testimony *if no outstanding issues remain*. Findings & Recommendation, 5 (citing *Harman*, 211 F.3d at 1178; *see also Varney v. Secretary of Health and Human Services*, 859 F.2d 1396, 1401 (9th Cir. 1988))(emphasis added). Examples of "outstanding issues" include an insufficient medical record or vocational testimony that does not address omitted limitations. *Id.* Unresolved determinations regarding substance abuse also warrant remand for further proceedings. *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998). The original Finding & Recommendations's reference to a record which may "otherwise support disability" acknowledged these instances. Original Findings & Recommendation, 10. I do not find a meaningful difference between the *Harman* standard articulated in the original Findings & Recommendation and the standard espoused in the Order.

Regarding the third *Harman* prong, the court again notes that the reviewing court may not credit testimony unless "it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Harman*, 211 F.3d at 1178. This is not presently the case for the reasons discussed in detail below.

The reviewing court's authority to credit testimony is additionally discretionary. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003). The reviewing court may again decline to credit

improperly rejected testimony if there are "insufficient findings as to whether [claimant's] testimony should be credited as true." *Id.* It is axiomatic that a reviewing court may not credit testimony that would establish a disability finding contrary to the Commissioner's regulations.

**B.    Discussion:  Clark's Testimony**

Clark submitted responses to a Disability Determination Services ("DDS")[3] questionnaire and additionally testified at her March 2000 and April 2005 hearings.

Clark's questionnaire responses initially stated that her impairments prevent her from working because "I am not capable of dealing with people" and that her back "also causes considerable pain when sitting for long periods." Tr. 103.  She also stated that she "cannot move freely" when she has a spasm in her back and that her pain worsens when she remains in the same position, stands, or walks for unspecified long periods. Tr. 125.  Clark asserted that her back pain lasts between one and three hours, and when asked "how often do you have this pain," she wrote, "when I can position" and checked "day" without elaboration. *Id.* In response to a question asking "How bad is the pain?" Clark wrote, "cannot concentrate" and added that "continu[ing] working" and staying in one position exacerbates her pain. Tr. 127.  Clark stated that changing positions often relieves her pain, and she left all questions about medications blank, stating that she does "not like medication as they [sic] inhibit mental processes." Tr. 126, 130.  Finally, declining to endorse significant physical limitations in her activities of daily living, Clark wrote, "most of my problem is starting to appear to be psychological. Lately I notice I avoid contact with people . . . as much as

---

[3] DDS is a federally-funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R. § 404.1503.

possible." Tr. 135.

Clark testified at her March 2000 and April 2005 hearings as well.  At her March 2000 hearing Clark stated that she "can't sit for any length of time," that she has difficulty working with people, and that she shakes if she is around people or in public spaces with "too many people around." Tr. 1214.  Clark also reported that she "isolated" herself (Tr. 1220), stayed in her house for three to four days a week, and did not go to AA meetings because they were "full of strangers." Tr. 1224-25. Finally, Clark stated that she experiences anxiety, cannot concentrate, reclines for three to four out of every eight hours, and elevates her feet to relieve pain.  Tr. 1227-28, 1231-32.

Regarding medication, Clark testified that she could not tolerate Buspar (an anxiety medication) and that she did not like to take other pain medication because it impeded her ability to function, though she had pain medication which she used "when I have to, but I try not to rely on them." Tr. 1229, 1234.

Clark described work that she did for her friend, Bonnie Poindexter, and explained that Poindexter allowed Clark to work at a slow pace and leave "if it got too rough." Tr. 1219.

Finally, Clark briefly testified at her April 2005 hearing. Tr. 1348-1353.  Clark testified that she was taking Prozac for her depression and receiving mental health treatment from Dr. Smith.  Tr. 1348-49. Clark also stated that she completed a sobriety program, but did not attend AA meetings because she "can't deal with groups of people." Tr. 1347, 1351.

The ALJ's RFC restricted Clark to sedentary work and limited Clark from any more than "occasional" interaction with the general public. Tr. 29-30.  The present discussion is thus limited to whether additional limitations Clark described should be credited.

Clark's Objections to the original Findings & Recommendation cited her testimony at her March 2000 hearing that she must recline between two and one-half and three hours during an eight-hour workday. Pl.'s Obj. 4. As noted, Clark testified that she will not take pain medication because she "feels very strongly that I gave up alcohol and all, if you're overdoing the medication, you just, you know, you're doing the same thing, you're changing the medication." Tr. 1231. Clark's counsel then asked her how often during an eight-hour period would she be "literally laying down due to your pain?" *Id.* Clark responded, "probably 'bout three hours, two and a half, three hours." *Id.*

The Commissioner's regulations explicitly state that, "In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work." 20 C.F.R. § 404.1530. A claimant may provide reasons for refusing treatment, such as inability to afford treatment, treatment contradictory to claimant's religion, or treatment posing extraordinary risk. *Gamble v. Chater*, 6 F.3d, 319, 321(9th Cir. 1995); 20 C.F.R. § 404.1530. I note that Clark's physicians prescribed pain medication, but conclude that the ALJ, not the reviewing court, must determine whether Clark's alcohol addiction reasonably precludes her from taking pain medication under the Commissioner's regulations. *Connett*, 340 F.3d at 876. Furthermore, if the ALJ revises Clark's RFC in the course of these proceedings, he must obtain new testimony from a vocational expert. If a revised RFC establishes disability, the ALJ must also consider the effect of Clark's drug and alcohol use, as discussed below. Thus, there are "outstanding issues" in the record which preclude me from crediting Clark's testimony *Harman*'s second prong.

## C.    Credibility Conclusion

The third *Harman* prong instructs that I may credit a claimant's testimony when "it is clear

from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Harman*, 211 F.3d at 1172.  It follows from the discussion above that I may not credit Clark's testimony under this prong of the *Harman* standard.  The ALJ, not this court, must review the outstanding issues in the record regarding both Clark's noncompliance with her pain medication, her alcohol abuse, and the other issues identified in these findings and recommendation.  *Connett*, 340 F.3d at 876.  This analysis precludes me from finding Clark disabled under the third *Harman* prong; in order to credit a claimant's testimony, this court must find that the claimant meets all three elements of the *Harman* standard.  *Harman*, 211 F.3d at 1172.  Because Clark fails to show that this court must credit her testimony under the three *Harman* elements, I decline to credit her testimony.

II.    **Alcohol Abuse**

Clark also contends that the ALJ erroneously rejected physician opinions based upon his "confusion regarding Plaintiff's date of sobriety." Pl.'s Opening Br., 28.  The ALJ does not consider alcoholism or drug addiction as a "material factor" to disability unless he first reaches a conclusion that the claimant would be disabled without consideration of substance abuse. 20 C.F.R. § 404.1535.  The claimant bears the burden of showing that substance abuse is not material to the disability finding. *Ball v. Massanari*, 254 F.3d 817, 821 (9th Cir. 2001).

Because the ALJ did not find Clark disabled, such reasoning is inapplicable here.  If, upon remand, the ALJ finds that the improperly rejected evidence establishes disability, the ALJ must perform a subsequent analysis to determine if Clark's alcohol abuse is a "contributing factor" to her disability at any point in the period during which Clark claims disability.  *Id.*  The reviewing court may not perform this analysis. *Connett*, 340 F.3d at 874.

14 - AMENDED FINDINGS AND RECOMMENDATION

III.    **Medical Evidence**

Clark challenges the ALJ's evaluation of the opinions of Drs. Elmore, Smith, Parvin, Van de Lindt, Summers, Deitch, and Nelson. Pl.'s Opening Br., 28. Clark also challenges the ALJ's evaluation of Nurse Practitioner McComb's opinion. *Id.* Clark did not identify specific errors, but asserted only the general allegation that the ALJ failed to properly evaluate these opinions.

A.    **Standards**

In the original Findings & Recommendation, I did not discuss at length the legal standards an ALJ must apply in evaluating medical opinions because the Commissioner conceded that the ALJ failed to meet those standards. In accordance with Judge Brown's Order, however, I review those standards here. An ALJ must generally accord greater weight to a treating physician's opinion than an examining physician's opinion and, in turn, accord greater weight to an examining physician's opinion than to a reviewing physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ must give specific, legitimate reasons supported by substantial evidence for rejecting a controverted opinion from a treating or examining physician. *Id.* If the opinion is not contradicted by another physician, then the ALJ may reject it only for clear and convincing reasons. *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002).

B.    **Clark's Mental Impairments**

a.    **Treating Practitioners**

i.    **Treating Psychiatrist Dr. Elmore**

Clark's initial briefing before this court did not state why this court should credit Dr. Elmore's opinion or identify the ALJ's error in assessing Dr. Elmore's opinion. Pl.'s Opening Br.

28. The Commissioner conceded that the matter should be remanded, but also did not address Dr.

Elmore's opinion. Judge Brown's Order does not address Dr. Elmore's opinion. I address it here

for completeness.

Veteran's Administration ("VA") psychiatrist Dr. Elmore treated Clark between June 15,

1998, and August 31, 1998. During this two-month period Clark consistently told Dr. Elmore she

was maintaining sobriety and experiencing agoraphobic symptoms; Dr. Elmore assessed her with

general anxiety disorder and alcohol dependence. Tr. 338, 340, 434, 437, 440, 445, 458, 604.

The ALJ found that Clark's "report of sobriety is contradicted both by the evidence of record

and the claimant's testimony, through this period of time." Tr. 23-24. He also noted Clark engaged

in daily and social activities which were inconsistent with the agoraphobic symptoms she reported

to Dr. Elmore. The ALJ concluded, "Dr. Elmore's assessment of "agoraphobia" is completely

without foundation, rendering her diagnosis of generalized anxiety disorder, [sic] questionable at

best. Accordingly, I give the assessment of Dr. Elmore no weight." Tr. 24.

An ALJ may reject portions of a physician's opinion predicated upon reports of a claimant

deemed not credible. *Ryan v. Astrue*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008); *Tonapetyan v.

Halter*, 80 F.3d 1148, 1149 (9th Cir. 2002). Here, the ALJ relied on Clark's inconsistent testimony

about her sobriety and activities which contradicted her reports of agoraphobic symptoms to Dr.

Elmore. Tr. 24. Normally, evidence establishing that Dr. Elmore's opinion was founded on

subjective reports lacking credibility would provide a clear and convincing basis to discount the

doctor's opinion. *Ryan*, 528 F.3d at 1199-1200, *Tonapetyan*, 80 F.3d at 1149. In the current

circumstances, however, the Commissioner concedes the ALJ must reassess Clark's credibility. If

16 - AMENDED FINDINGS AND RECOMMENDATION

the ALJ reaches a different credibility finding he must also reassess Dr. Elmore's opinion in light of such different finding.

### ii.     Treating Psychiatrist Dr. Smith

Clark's initial briefing did not cite specific reasons that this court should credit Dr. Smith's opinion, Pl.'s Opening Br. 28, nor did the Commissioner identify reasons that Dr. Smith's opinion should not be credited. Judge Brown's Order states that the ALJ improperly assessed Dr. Smith's opinion in light of Clark's alleged onset date. Order, 4-5. The original Findings & Recommendation did not address this issue because in their briefs neither party disputed Clark's onset date, her date last insured, or the ALJ's determination at step two, and neither party cited SSR 83-20 as a basis for challenging the ALJ's decision.

Between July 26, 2002, and May 24, 2005, Veteran's Administration psychiatrist Dr. Smith treated Clark. Dr. Smith relied on Clark's history of post-traumatic stress disorder ("PTSD") and other subjective reports, and assessed dysthymia, PTSD, major depressive disorder, panic disorder, and alcohol abuse. Tr. 849, 897. On October 10, 2002, Dr. Smith wrote that Clark is "unable to return to sedentary work" due to "poor concentration, poor attention, low energy, low mood, irritability which makes it difficult to deal with other people, and extreme anxiety around other people." Tr. 839. Dr. Smith concluded that Clark "remains severely incapacitated from her PTSD, depression, and panic disorder." Tr. 840. Dr. Smith ceased treating Clark on May 24, 2005, and returned Clark to the care of her general physician. Tr. 1089. Dr. Smith's final assessment continued to include dysthymia, PTSD, major depressive disorder, panic disorder, and alcohol abuse in remission with "most recent relapse" in September 2004. Tr. 1090.

The ALJ discussed Dr. Smith's October 2002 letter and concluded, "It appears that Dr. Smith's opinion is based entirely on the claimant's reports and desire to remain 'unemployable' and eligible for VA compensation." Tr. 27 (internal citations omitted). As with Dr. Elmore's opinion, the ALJ relied primarily on his determination that Clark's subjective reports to Dr. Smith were unreliable. Because the ALJ must revisit his determination regarding Clark's credibility, the ALJ must also reassess Dr. Smith's opinion after revisiting Clark's credibility.

In her briefing to this court, Clark did not assert a specific error regarding the ALJ's analysis of Dr. Smith's opinion, Pl.'s Opening Br. 28-29, and thus the original Findings & Recommendation did not address any such argument. Clark raised these arguments for the first time in her Objections to the original Findings & Recommendation. Pl.'s Obj., 1-2. In accordance with Judge Brown's Order, I address Clark's arguments on this issue.

> **1.     Onset Date**

Judge Brown's Order instructs that an ALJ "may not reject a medical opinion on the ground that it is given after a claimant's date last insured." Order, 5.

Review of the ALJ's determination on this point reveals that the ALJ did not reject Dr. Smith's opinion based on the date it was given. Instead, the ALJ reasonably interpreted the letter and gave effect to specific time qualifications Dr. Smith placed on her opinion. Dr. Smith's letter of October 10, 2002, states, "*At this point* [Clark] is unable to return to the sedentary work that she did in the service and afterward due to poor concentration, poor attention, low energy, low mood, irritability which makes it difficult for her to deal with other people, and extreme anxiety when around other people." Tr. 839 (emphasis added).

Clark did not challenge the ALJ's assessment of Dr. Smith's opinion based on the standards set forth in SSR 83-20 for determining the onset of disability. Pl.'s Opening Br., 28. Judge Brown recited those standards, however, stating: "[I]f the onset date of a claimant's disability is unclear, the ALJ cannot infer such a date from the medical evidence as support for a conclusion that the claimant's symptoms were not severe before her date last insured without the testimony of a medical expert." Order, 6 (citing *DeLorme v. Sullivan*, 924 F.2d 841, 848 (9th Cir. 1991)).[4] Accordingly, I have carefully considered how SSR 83-20 might apply with respect to Dr. Smith's opinion.

The standard articulated in SSR 83-20, entitled "Onset of Disability," applies when the evidence establishes that the claimant is disabled. SSR 83-20 provides that when a claimant is found disabled, the decision-maker also must correctly establish the onset date based on evidence in the record. SSR 83-20 requires the ALJ to assist a claimant who has been found disabled in creating a complete record as to the onset of disability. Instead of inferring an onset date which would deny benefits to the disabled claimant, SSR 83-20 requires the ALJ to create a record which forms a basis for the onset date. *Armstrong v. Comm'r of Soc. Sec. Admin.,* 160 F.3d 587, 590 (9th Cir. 1998). As Judge Brown indicated, the ALJ can fulfill that responsibility by calling a medical expert. *Id.*; *accord DeLorme*, 924 F.2d at 848 ("In the event that the medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires the administrative law judge to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination.").

---

[4] The relevant passage from *DeLorme* reads: "In the event that the medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires the administrative law judge to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination." *DeLorme*, 924 F.2d at 848.

After further consideration, I conclude SSR 83-20 does not apply at this juncture of the present case because the ALJ did not determine that Clark was disabled. Because there was no determination of disability, the ALJ's responsibility to determine the onset of disability was not implicated. Should proceedings after remand produce a finding of disability, the Commissioner must ensure the record forms an adequate basis for determining the onset date of disability, consistent with the SSR 83-20 and the Ninth Circuit decisions construing that ruling. If the circumstances require it, the evidence must include the testimony of a medical expert to assist in making that record.[5]

Finally, in her Order, Judge Brown's Order noted that "if the onset date of a claimant's disability is unclear, the ALJ cannot infer such a date from the medical evidence as support for a conclusion that the claimant's symptoms were not severe before her date last insured." Order, 6. This court has applied SSR 83-20p to a step two analysis when a claimant whose claim was denied at step two later presumptively met a step three listing establishing disability. *Wray v. Astrue*, No. 06-CV-492-BR, slip op. at 8-9, 17 (D. Or. Apr. 9, 2007). The present case differs because the ALJ resolved step two in Clark's favor, finding that she had a combination of impairments that satisfied the regulatory definition of severe before her insured status expired. Tr. 31. Accordingly, based on my reading of the record on this point, the ALJ did not infer an onset date as support for an adverse step-two finding.

In conclusion, as interpreted by the ALJ, Dr. Smith's letter did not suggest that Clark was

---

[5]It is worth noting that the Commissioner previously developed the record in this case. The ALJ had the written opinions of the state agency medical experts who reviewed Clark's medical and psychological records. The ALJ also solicited testimony from a medical expert witness at Clark's hearing in March 2000, and from two additional medical experts at Clark's hearing in October 2002. Tr. 1235-51, 1263-1292.

disabled prior to her October 2002 opinion. The ALJ could reasonably infer that Dr. Smith included

the phrase "at this time" because she did not intend to render a retrospective opinion. I cannot

conclude that the ALJ's interpretation is irrational. The ALJ's factual findings must be upheld if

supported by inferences reasonably drawn from the record and if evidence exists to support more

than one rational interpretation, the reviewing court must defer to the Commissioner's findings.

*Batson,* 359 F.3d at 1193; *Andrews v. Shalala,* 53 F.3d 1035, 1039-40 (9th Cir. 1995); *Burch,* 400

F.3d at 679.

### 2.    Disability Opinions Reserved For the Commissioner

The ALJ correctly found that Dr. Smith's statement that Clark was "unable to return to

sedentary work" cannot be given controlling weight. Tr. 27. Such statements are not medical

opinions about specific functional limitations, but administrative findings reserved to the

Commissioner. 20 C.F.R. § 404.1527(e)(1),(2); SSR 96-5p (available at 1996 WL 374183); *Reddick*

*v. Chater,* 157 F.3d 715, 725 (9th Cir. 1998). They cannot be given "controlling weight or special

significance," SSR 96-5p at *2, even though offered by a treating physician. The ALJ evaluates such

opinions under the usual standards for evaluating treating physicians, *Reddick,* 157 F.3d at 725, and

the ALJ must do this upon remand.

### 3.    Physician Opinions Inconsistent With the Record

If a treating physician's opinion is contradicted by another physician, the ALJ need only give

"specific and legitimate reasons supported by substantial evidence in the record" to reject the

contradicted opinion. *Lester,* 81 F.3d at 830. As noted above, the ALJ also found Dr. Smith's

opinion inconsistent with many other exhibits of record. Tr. 27. The Ninth Circuit has credited

improperly rejected treating physician opinions where the ALJ relied upon the opinion of a medical expert and "unwarranted speculation" in rejecting the treating physician's opinion. *Lester*, 81 F.3d at 832-34. That is not the case here, and therefore Dr. Smith's opinion will not be credited under this reasoning. Upon remand, however, the ALJ must explain the manner in which he found Dr. Smith's opinion inconsistent with other evidence in the record.

### 4.    Unsupported Physician Opinions

The ALJ also inferred that Dr. Smith's endorsement of disability (Tr. 839) is unsupported by her own notes. Tr. 27. Here the ALJ wrote that it is "not consistent with or supported by substantial and medical evidence of record." *Id.* The ALJ cited numerous exhibits, including exhibit 32F, which contains Dr. Smith's notes. Tr. 839-40, 849, 851, 890-99. The ALJ may reject a physician's opinion that is unsupported by clinical findings, *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005), and the ALJ cited Dr. Smith's notes in rejecting her opinion. Thus, and contrary to Clark's suggestion, Pl.'s Obj. 2, the ALJ, not this court, made the original citation to Dr. Smith's notes. However, I agree that the ALJ should have further articulated his reasoning, which he should do upon remand.

### b.    Examining Physicians Drs. Parvin, Van de Lindt, Summers, and Deitch

#### i.    Examining Psychologist Dr. Parvin

VA psychologist Dr. Parvin examined Clark once, on October 16, 1998, and assessed generalized anxiety disorder, dysthymia, and alcohol abuse in early remission. Tr. 381-85. The ALJ cited Dr. Parvin's clinical notes ("exhibit 17F") five times. Tr. 27-29.

Clark does not articulate specific error in the ALJ's reference to Dr. Parvin. Though the

Commissioner concedes that the ALJ should re-evaluate all medical evidence, I note that Dr. Parvin's opinion does not establish limitations beyond Clark's present RFC, *infra* 5, and that crediting Dr. Parvin's opinion would serve no useful purpose.

### ii.    Examining Psychiatrist Dr. Van de Lindt

DDS examining psychiatrist Dr. Van de Lindt assessed Clark on May 19, 1997, approximately seven months prior to Clark's alleged onset date. Tr. 271-74. Dr. Van de Lindt assessed dysthymia and "cluster of C traits." Tr. 274. Dr. Van de Lindt made no work-related restrictions and concluded that Clark's prognosis is "moderate to good." Tr. 274.

The ALJ cited Dr. Van de Lindt's finding and gave "the diagnostic assessment and [Global Assessment of Functioning][6] score by Dr. Van de Lindt no weight as it is not consistent with or supported by any objective medical signs or clinical findings in the record." Tr. 23. This analysis is appropriate. *Bayliss*, 427 F.3d at 1217. Because the Commissioner concedes that the ALJ must re-evaluate the medical record, the ALJ must further explain his reasoning for this conclusion upon remand.

### iii.    Examining Physician Dr. Summers

VA physician Dr. Summers examined Clark on September 4, 1997, in conjunction with her application for veteran's benefits. Tr. 394-98. Dr. Summers assessed chronic dysthymic disorder and generalized anxiety disorder. Tr. 398. Dr. Summers noted Clark's reports of inability to find employment and difficulty relating to others, concluding that Clark is "significantly impaired, both

---

[6]The Global Assessment of Functioning ("GAF") scale is used to report a clinician's judgment of the patient's overall level of functioning on a scale of 1 to 100. *Diagnostic and Statistical Manual of Mental Disorders*, 32-34 (4th ed. Text Revision 2004)(*DSM-IV-TR*).

industrially and socially." *Id.*

Clark's initial briefing did not indicate why Dr. Summer'ss opinion should be credited, or the manner in which it might establish disability. Pl.'s Opening Br. 28-29. The ALJ did not directly cite Dr. Summers's opinion, and the Commissioner concedes that this omission was erroneous. Dr. Summers did not limit Clark from any specific work functions delineated by the Commissioner, which I noted in my original Findings & Recommendation. Original Findings & Recommendation, 8.

I again find Dr. Summers's statement that Clark is "significantly impaired, both industrially and socially" too vague to establish a work-related restriction which must be credited. Because Dr. Summers did not address specific occupational functions, her opinion, if credited, would not support a finding of disability without vocational testimony addressing the specific effects of this limitation. The ALJ, not the reviewing court, must determine whether Dr. Summers's opinion that Clark is "significantly impaired" results in an RFC assessment which, in conjunction with a vocational expert's testimony,  would necessarily establish disability. *Connett*, 340 F.3d at 874. I therefore decline to credit Dr. Summers's opinion.

### iv.    Examining Psychologist Dr. Deitch

Examining psychologist Dr. Deitch performed a second DDS examination on June 22, 1998. Tr. 358-62. Dr. Deitch assessed a "provisional" diagnosis of alcohol dependence in "early full remission, in a semi-controlled environment," dysthymia "by documentation" in remission, and a rule-out diagnosis of post-traumatic stress disorder. Tr. 362.

The ALJ assigned Dr. Deitch's testimony no weight. Tr. 24. The ALJ found Dr. Deitch's

assertion that Clark's depression was in remission inconsistent with concurrent medical records. *Id.*
The ALJ also found Dr. Deitch's assertion that Clark's alcohol abuse was in "full" remission
contradicted by other indications in the record showing that Clark's alcohol abuse continued, and
noted that Dr. Deitch apparently relied upon Clark's self-reporting in construing this assessment.
*Id.* Finally, the ALJ found a contradiction between Dr. Deitch's opinion that Clark experienced
improvement and Dr. Deitch's suggested GAF score of forty five. *Id.*

Because the Commissioner concedes that the ALJ should reconsider Dr. Deitch's opinion,
I again note only that the ALJ may reject portions of a physician opinion predicated upon the
testimony of a claimant found not credible. *Tonapetyan*, 278 F.3d at 1149. I decline to credit Dr.
Deitch's opinion because, as the ALJ noted, the record contradicts Dr. Deitch's findings regarding
Clark's alcohol abuse. Dr. Deitch's assessment of improved dysthymia is furthermore not consistent
with a finding of disability. Finally, GAF scores do not determine disability under the
Commissioner's Regulations. The Commissioner states, "[t]he GAF scale . . . does not have a direct
correlation to the severity requirements in our mental disorders listings." 65 Fed. Reg. 50, 746 at
50,764 - 50,765 (August 21, 2000) (discussing comments to 20 C.F.R. pt. 404, subpt. P, app. 1,
Listing 12.00D). If the ALJ revises his credibility assessment upon remand, he should accordingly
revise his assessment of Dr. Deitch's opinion.

    **c.**    **Nurse Practitioner McComb**

Nurse practitioner Margaret McComb provided mental health counseling and medication for
Clark between an unspecified period and March 2001. McComb's clinical notes reflect her
diagnostic impressions of PTSD, depression, dysthymia, and alcohol abuse. Tr. 510-11, 513, 518,

522, 799-801, 1000, 10002-03.[7]  McComb also documented Clark's numerous failures to attend appointments. Tr. 515, 1000-01.  McComb dismissed Clark from her caseload on March 14, 2001. Tr. 996.

Clark did not object to the analysis of McComb's opinion set out in the original Findings & Recommendation.  However, Judge Brown's Order notes that the "important" opinions rendered by non-acceptable medical sources must be evaluated under the standards articulated in SSR 06-03p. Order, 12.  Clark's initial submission did not specify what aspect of McComb's opinion should be credited.  Pl.'s Opening Br., 28.  While Clark recited McComb's diagnoses and speculations that Clark would be unable to function in the workplace, Clark did not cite any clinical observations. Pl.'s Opening Br., 16.  Therefore, the original Findings & Recommendation applied SSR 06-03p, noting that nurse practitioners may not establish diagnoses.[8]

The Order correctly notes that nurse practitioners remain "other medical sources" which may "show the severity of your impairment and how it affects your ability to work."  20 C.F.R. § 404.1513(d)(1).  The Commissioner has issued specific instruction for evaluation of such sources:

> [D]epending on the particular facts in a case, and after applying the
> factors for weighing opinion evidence, an opinion from a medical
> source who is not an "acceptable medical source" may outweigh the

---

[7]Portions of McComb's notes are illegible.  Because they are marked "best copy obtainable," this court will not recommend the Commissioner be ordered to obtain additional copies. Tr. 515, 519, 522-28.

[8] Relevant to this point, SSR 06-3p reads: "Information from these 'other sources' cannot establish the existence of a medically determinable impairment.  Instead, there must be evidence from an 'acceptable medical source' for this purpose.  However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p at *2.

> opinion of an "acceptable medical source". . . For example, it may be
> appropriate to give more weight to the opinion of a medical source
> who is not an "acceptable medical source" if he or she has seen the
> individual more often than the treating source and has provided better
> supporting evidence and a better explanation for his or her opinion.

SSR 06-3p at *5 (available at 2006 WL 2329939).   However, the Commissioner's instructions

explicitly state that "other medical sources cannot establish the existence of a medically determinable

impairment." *Id.* at *2.

The ALJ was therefore not obliged to accept McComb's diagnoses, but he was required to

adequately explain his rejection of McComb's clinical impressions and observations. Here, the ALJ

noted that McComb suggested a PTSD diagnosis, and then observed, "Ms. McComb's opinion

appears to be based solely on claimant's self reports of symptoms and alleged limitations, I

[therefore] give the assessments no weight." Tr. 26.

Again, I note that the ALJ may reject portions of medical source opinions predicated upon

reports of a claimant deemed not credible. *Tonapetyan* 242, F.3d at 1149.  The record also supports

the ALJ's conclusion that McComb conducted no clinical testing and instead relied upon Clark's

reports in making her conclusions. However, because the Commissioner concedes that the ALJ must

reassess the medical evidence, including McComb's opinion, I instruct the ALJ to provide more

detailed findings regarding McComb's opinion upon remand.

### C.     Clark's Physical Impairments

### a.     Treating Physician Dr. Nelson

VA general physician Dr. Nelson treated Clark between September 1997 and December

2001. Between September 1997 and September 1998 Dr. Nelson conducted gynecological exams

with no abnormal findings (Tr. 327, 470), referred Clark for mental health treatment (Tr. 333, 433, 474-76), and noted Clark's reports of back pain (Tr. 472).

Dr. Nelson submitted a letter to the record dated May 19, 1999, stating that Clark had lower back pain between February and May 1999 and a shoulder nerve impingement causing difficulty using her right hand. Tr. 505, 609. Dr. Nelson concluded, "these conditions have greatly impaired [Clark's] ability to perform school work as well as her usual daily activities. We are planning to initiate physical therapy within the next few weeks." *Id.*

Dr. Nelson submitted a second letter to the record dated June 22, 2000. Tr. 717. Dr. Nelson wrote that Clark

> [C]annot sustain a high level of concentration with tasks. *She believes* her ability to focus on a task is affected by physical discomfort and the need to move about. She has significant social anxieties and cannot tolerate interpersonal expectations such as hurrying or meeting goals of supervisors. Ms. Clark underwent hip surgery last year and continues to have back pain most of the time. Although she is able to ambulate, other activities such as sitting or standing for more than a couple of hours at a time, bending, lifting more than 10-15 pounds, or climbing stairs cannot be tolerated on a regular basis.

*Id.* (emphasis added).

Dr. Nelson continued to treat Clark until December 2001, noting sinusitis and bronchitis (Tr. 797-8), gas and heartburn (Tr. 793-94), asthma, and back pain (Tr. 997-99). On December 12, 2001, Dr. Nelson wrote that Clark, on her own initiative, stopped taking her antidepressant medication without consulting her physician because Clark "believes she doesn't need an antidepressant now." Tr. 932.

The ALJ first noted that Dr. Nelson prescribed physical therapy for Clark's back condition.

Tr. 23. The ALJ also discussed Dr. Nelson's May 1999 and June 2002 letters suggesting Clark's workplace limitations. Tr. 26. The Commissioner concedes that the ALJ improperly evaluated Dr. Nelson's opinions.

The ALJ's RFC encompassed the limitations assessed by Dr. Nelson. This RFC allows Clark to change positions not less than every two hours, restricts Clark from lifting more than ten pounds, restricts her from stooping, kneeling, crouching, or crawling, and restricts Clark from more than occasional public interaction. For this reason, crediting Dr. Nelson's opinion would be redundant and is therefore unnecessary.

## IV.    The ALJ's Duty to Develop the Record

Clark's initial submissions to this court did not contend that the ALJ failed to develop the record, Pl.'s Opening Br., and for that reason I did not address this standard in my original Findings & Recommendation. However, Judge Brown's Order notes that, "[i]n any event, the Social Security Regulations require" that the ALJ must comply with 20 C.F.R. § 404.1512(e). Order, 8.

The Commissioner's regulations state that, "When the evidence we receive from your treating physicians or psychologists or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or decision." 20 C.F.R. § 404.1512(e). The regulations continue:

> We will seek additional evidence or clarification from your medical source when the report from your medical source contains an ambiguity that must be resolved, the report does not contain the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.

20 C.F.R. § 404.1512(e)(1).

29 - AMENDED FINDINGS AND RECOMMENDATION

The Ninth Circuit has clearly stated that the ALJ's duty to develop the record is triggered when evidence is insufficient or when ambiguities arise. *Bayliss*, 427 F.3d at 1217; *Armstrong*, 160 F.3d at 590. For example, the Ninth Circuit has ordered an ALJ to recontact a physician when ambiguities arise concerning the onset date of a claimant determined to be disabled. *Armstrong*, 160 F.3d at 590. However, the ALJ has no duty to re-contact evaluating sources. *Thomas*, 278 F.3d at 958.

While the ALJ is not "mere umpire," *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1991), the burden of establishing disability remains upon the claimant. *Yuckert*, 482 U.S. at 146; *Bayliss*, 427 F.3d at 1217 (citing *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999)). I agree that Dr. Summers's opinion that Clark is impaired "both industrially and socially" (Tr. 398) is vague, but no authority suggests that the regulations require the ALJ to continually develop the record until disability is established. Rather, the Social Security regulations require the ALJ to assist the claimant in developing a complete record. *Yuckert*, 482 U.S. at 146. No evidence presently suggests that Clark's record is incomplete. The burden of establishing disability remains upon Clark, and she has not established that the record is insufficient or contains ambiguities warranting further development.

## V.    Lay Testimony

The Commissioner concedes (Def.'s Br., 2) and I agree that the ALJ's omission of Bonnie Poindexter's testimony should not be sustained.

Poindexter testified that she employed Clark in 1996 and 1997 (Tr. 1297) and also submitted an undated and unsigned statement to the record describing Clark's workplace functioning. Tr. 237.

Poindexter first described Clark's difficulty standing after sitting for two hours and her need to walk

and change position over the course of a four-hour shift. *Id.* Poindexter also described Clark's

difficulty bending and reaching the floor due to back and neck problems, and stated that Clark must

rest after walking her dog two blocks. *Id.* Poindexter subsequently described Clark's emotional

difficulties in the workplace, stating that Clark becomes distressed when given multiple tasks to

complete or multiple instructions. *Id.* Poindexter finally stated that Clark would occasionally report

for work inebriated during the periods she abused alcohol, but concluded, "I have observed no

improvement in her ability to cope and perform her [workplace] duties since becoming sober." *Id.*

Clark asserts that Poindexter's testimony establishes disability. Pl.'s Opening Br., 27.

Where the ALJ fails to "properly discuss competent lay testimony favorable to the claimant, a

reviewing court cannot consider the error harmless unless it can confidently conclude that no

reasonable ALJ, when fully crediting the testimony, could have reached a different disability

determination." *Stout v. Comm'r*, 454 F.3d 1050, 1056 (9th Cir. 2006). The Order concludes that

the original F & R "did not address whether the ALJ's error in failing to consider Poindexter's

testimony was harmless pursuant to *Stout*." Order, 11. However, I noted that the standard under

which this court may credit lay testimony. Original Findings & Recommendation, 11 (citing *Stout*,

454 F.3d at 1056). In accordance with the Order, I now expressly state that the ALJ's omission of

Poindexter's testimony was not harmless, but will not be credited for the reason that follows.

Clark asserts that Poindexter's testimony establishes disability and thus should be credited.

Pl.'s Opening Br., 27. Poindexter's testimony establishes only that Clark's workplace functioning

may be impacted by her impairments. The *Stout* court addressed a nearly identical circumstance:

> If fully credited, the lay testimony supports a conclusion that Stout's mental impairments render him in need of a special working environment which, particularly when considering the VE's testimony, a reasonable ALJ could find precludes Stout from returning to substantial gainful activity . . . [The ALJ's] silent disregard thus leaves us . . . with nothing to review to determine whether the error materially impacted the ALJ's ultimate decision.

*Stout*, 454 F.3d at 1056 (internal citations omitted). The *Stout* court subsequently reversed and remanded the matter for further consideration, and did not credit the lay testimony. *Id.*

The reviewing court may credit lay testimony when crediting that testimony establishes disability. *Schneider v. Comm'r*, 223 F.3d 968, 976 (9th Cir. 2000). However, testimony alone never establishes disability. 20 C.F.R. § 404.1508 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms."). The *Schneider* court credited lay testimony because, in that case, when the lay testimony was "given the effect required by the regulations, it becomes clear that the severity of Ms. Schneider's functional limitations is sufficient to meet or equal Listing §12.04. As a result, we reverse and remand for benefits." *Schneider*, 223 F.3d at 976 (citing *Lester*, 80 F.3d at 834). Here, Poindexter's testimony does not establish that Clark meets a listed impairment and does not establish limitations that a vocational expert confirmed would preclude work in the national economy. For this reason, I decline to credit Poindexter's testimony.

## VI.    RFC Assessment

Clark asserts that the ALJ's RFC assessment is disabling. Pl.'s Opening Br., 22. Clark relies upon SSR 96-9p (available at 1996 WL 374185), contending that if an ALJ finds that a claimant is precluded from stooping, she cannot perform sedentary work. The Commissioner correctly asserts

that SSR 96-9p does not mandate a finding of disability. Def.'s Br., 6. SSR 96-9p states that an

ability to stoop is "required in most unskilled sedentary occupations." SSR 96-9p at *8. The ALJ

did not restrict Clark to "unskilled" work. Furthermore, SSR 96-9p continues, "A complete inability

to stoop would significantly erode the *unskilled* sedentary occupational base and a finding that the

individual is disabled would usually apply." *Id.* (emphasis added). Because Clark is not restricted

to unskilled work, SSR 96-9p does not apply.

**VII.    Veteran's Administration Disability Finding**

The VA awarded Clark an eighty percent disability rating on January 29, 1998. Tr. 299. This

rating was based upon Clark's "anxiety reaction with depressed mood," thoracic spine arthritis, and

right and left knee conditions. *Id.* The VA's decision did not indicate that its disability rating was

service-connected. *Id.* On April 4, 2000, the VA increased this rating to ninety percent and granted

Clark "individual unemployability" under VA standards. Tr. 789.

The ALJ rejected the VA decision because it was inconsistent with the entirety of the medical

evidence and with Clark's own statements regarding her daily activities. Tr. 22-25. While the ALJ

is not bound by other agency decisions, 20 C.F.R. § 404.1504, the ALJ must provide "persuasive,

specific, valid reasons" for rejecting a VA disability determination. *McCartey v. Massinari*, 298

F.3d 1072, 1076 (9th Cir. 2002). Because the ALJ must reevaluate the medical evidence and Clark's

credibility upon remand, his reliance upon this evidence in rejecting the VA determination should

not be sustained.

**VIII.  The ALJ's Step Five Findings**

In making a step five finding which includes non-exertional limitations, the ALJ is required

to propound a hypothetical to a vocational expert. *Tackett*, 180 F.3d at 1101-02. This hypothetical must be "based on medical assumptions supported by substantial evidence in the record that reflects all of the claimant's limitations." *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2003). The ALJ solicited testimony from a vocational expert at Clark's March 2000 hearing and again at her April 2005 hearing. Tr. 1252-59, 1353-63.

Clark's initial submissions asserted that the vocational expert's testimony was without evidentiary value. Pl.'s Opening Br., 30-31. Clark's argument did not specify what "alleged limitation" the vocational expert did not address, though Clark cited SSR 85-16 regarding "the importance of residual functional capacity assessments in *mental* impairments." Pl.'s Opening Br., 30 (emphasis added).

The ALJ's questions to the vocational expert at Clark's April 2005 hearing included "modified sedentary work" with "no more than occasional" public contact. Tr. 1356. Though the ALJ noted postural modifications in his decision, he did not specify postural modifications in his hypothetical questions to the vocational expert. Tr. 1355, 1356. This testimony therefore conflicts with the ALJ's RFC assessment and thus has no evidentiary value. The ALJ's reliance upon this testimony should not be sustained.

## IX.    HALLEX Submission

In her reply brief, Clark asks the court for the first time to direct her case to a new ALJ in the event of further proceedings. Pl.'s Reply Br., 5. Clark cites the Commissioner's "Hearings, Appeals and Litigation Manual ("HALLEX"). *Id.* The HALLEX manual does not create legally enforceable duties. *See, e.g., Lowry v. Barnhart*, 329 F.3d 1019, 1023-24 (9th Cir. 2002) (finding that HALLEX

does not impose enforceable duties). Therefore, this court is not constrained by a HALLEX submission. *Id.* at 1023. Furthermore, Clark cites to no reason supported by the record that would compel a conclusion that ALJ Hyatt should not hear this matter on remand. For these reasons, Clark's request that this court order the Commissioner to assign the matter to a new ALJ as a matter of law should not be granted.

## CONCLUSION

The ALJ erred in assessing Clark's testimony, the medical evidence, and the testimony of lay witness Poindexter. However, the improperly assessed evidence does not establish disability for the reasons discussed in each instance above. In such circumstances, award of benefits by the court is inappropriate. *Varney*, 859 F.2d at 1401. Therefore, the matter should be remanded for further proceedings. *Id.* The ALJ must re-evaluate the evidence, reformulate Clark's RFC, if necessary, and subsequently obtain new testimony from a vocational expert, ascertaining that this testimony is compatible with the *Dictionary of Occupational Titles*.

Finally, I note that the Order stated that "Plaintiff's claim for DIB has spanned more than ten years and has already been remanded four times to the Commissioner for further administrative proceedings . . . [T]he Magistrate Judge recommends the Court grant the Commissioner's Motion for Remand, which would be a fifth remand for additional proceedings." Order, 3. The court is mindful of the length of time Clark's claim has been pending and of the extended administrative journey her claim has traveled, and this seems at least in part the basis for Clark's repeated urging that the court simply remand the matter to the Commissioner with an instruction to award her benefits. I note, however, that the present proceeding is in fact the first time this matter has come

before this court. All previous proceedings were the province of the Commissioner and the matter has not previously been remanded back to the Commissioner from the court, thus making this the first, not the fifth, remand by the court. Whatever this court's view of the administrative process in this case, it cannot substitute its preferences for controlling precedent or governing regulations, or tender to Clark a result which, if she is to obtain it, more properly must result from the ALJ's application of the controlling standards to the facts of this case in the required administrative procedure.

## RECOMMENDATION

The Commissioner's decision that Clark did not suffer from disability and is not entitled to benefits under Title II of the Social Security Act is not based upon correct legal standards or supported by substantial evidence. The Commissioner's decision should be REVERSED and REMANDED for further proceedings consistent with these findings and recommendation.

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due _October 6_, 2008. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

A party may respond to another party's objections within 10 days after service of a copy of the objections. If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or on the latest date for filing a response.

///

///

36 - AMENDED FINDINGS AND RECOMMENDATION

IT IS SO ORDERED.

Dated this ___ day of September, 2008.

John V. Acosta
United States Magistrate Judge

37 - AMENDED FINDINGS AND RECOMMENDATION